# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

MAR 1 6 2017

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 1:17-sw-137
Disclosure of Location-Based Services for SPRINT )
Cellular Telephone Number (443) 803-6082 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Facilities belonging to SPRINT associated with cellular telephone number (443) 803-6082. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(a) and Fed. Rule of Crim. P. 41.

located in the ____Unknown____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:
Disclosure of location-based electronic communications data for SPRINT cellular telephone number (443) 803-6082.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to distribute heroin |

The application is based on these facts:
See attached affidavit of Donald August Mockenhaupt, FBI Special Agent.

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Donald August Mockenhaupt, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __03/16/2017__

            /s/
_____
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia         The Honorable Theresa C. Buchanan, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A SEARCH WARRANT AND ORDERS ) <br> PURSUANT TO 18 U.S.C. §§ 2703(c)(1)(A) ) <br> AND 3122(a)(1) FOR THE 1) DISCLOSURE ) <br> OF LOCATION BASED SERVICES, ) <br> 2) DISCLOSURE OF STORED ) <br> TELECOMMUNICATIONS RECORDS FOR ) <br> TELEPHONE NUMBER **(443) 803-6082** ) <br> AND 3) INSTALLATION OF A PEN ) <br> REGISTER AND TRAP AND TRACE DEVICE ) | (Under Seal) <br><br> 1:17-sw-137 |

AFFIDAVIT IN SUPPORT OF
A SEARCH WARRANT AND ORDER UNDER 18 U.S.C. § 2703(c)(1)(A)
AND AN ORDER UNDER 18 U.S.C. § 3122(a)(1)

I, Donald August Mockenhaupt, being duly sworn, depose and state as follows:

INTRODUCTION

1. I am a duly appointed Special Agent of the Federal Bureau of Investigation (FBI) and have been employed as such since February 2002. I am currently assigned to a squad that investigates violent gangs and criminal enterprises out of the Washington (D.C.) Field Office, Northern Virginia Resident Agency, and I have been assigned to this squad since August 2004.

2. As an FBI Special Agent, I have received extensive training in the enforcement of the criminal laws of the United States, as well as extensive training in criminal investigations. I have also participated in numerous investigations involving unlawful narcotics distribution. In these investigations, I have been involved in the application for and execution of many arrest and search warrants for narcotics related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, illegal drug proceeds, and other

evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and users of controlled dangerous substances.

3. Based on my training, education, and experience, I know that it is common for individuals engaged in the distribution of controlled substances to use telephonic communications to further their criminal activities. I know that individuals engaging in the distribution of controlled substances use cellular telephones and cellular telephone technology to communicate and remain in constant contact with customers and the sources of those controlled substances. I also know that individuals who engage in the distribution of controlled substances use cellular telephones to exchange information with customers and/or source(s) of supply through text messaging and instant messaging in addition to direct telephone conversations.

4. This affidavit is submitted in support of an application for a search warrant, an order for the disclosure of location-based services and stored telecommunications records, and an order for the installation of a pen register and trap and trace device for the cellular telephone number **(443) 803-6082,** serviced by Sprint (as defined in the Application and herein as "SUBJECT TELEPHONE NUMBER"), pursuant to Federal Rule of Criminal Procedure 41(d)(1) and Title 18, United States Code, Sections 2703(c) and 3122(a). The SUBJECT TELEHONE NUMBER is suspected to be used by KAMURI VALONTE LEAK (LEAK), and for the reasons described herein, there is probable cause to believe that the SUBJECT TELEPHONE NUMBER is being used by LEAK in connection with and to further a conspiracy to distribute a mixture and substance

2

containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. The facts further demonstrate sufficient grounds to believe the disclosure of location-based services and the disclosure of stored telecommunications records, as well as the installation of a pen register and trap and trace device on the SUBJECT TELEPHONE NUMBER, will be relevant and material to an ongoing criminal investigation.

5. This affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant and orders. The facts and information contained in this affidavit are based on information from a confidential informant, my personal knowledge, and information obtained from other law enforcement officers. All observations referenced in this affidavit that were not personally made by me were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person(s).

## PROBABLE CAUSE

6. In 2016, the Arlington County Police Department (ACPD) initiated an investigation into the suspected narcotics trafficking of an individual who is now cooperating with law enforcement, hereafter referred to as cooperating defendant one, CD-1. CD-1 has multiple felony arrests and convictions. The offenses include grand larceny, possession of a firearm by a felon, burglary, credit card larceny, drug related offenses, DUI, and false statement to a peace officer. CD-1 has a pending state drug charge, a pending hit and run (vehicle damage) charge, and he will be charged with a federal drug charge in the instant investigation. CD-1 is a habitual drug user but is currently obtaining medical treatment for his addiction. CD-1 has legal representation and CD-1 is actively cooperating with federal law enforcement. CD-1 knows that he will plead

3

guilty to a federal drug charge in the future. In January 2017, I was assigned as the lead FBI case agent to this joint FBI-ACPD investigation into CD-1's heroin suppliers and co-conspirators.

7. In December 2016, CD-1 was arrested by the ACPD in the Eastern District of Virginia while in possession of suspected heroin. Following his arrest, ACPD obtained a search warrant for CD-1's residence, where they found additional suspected heroin. The substances are pending laboratory analysis. CD-1 provided information to law enforcement officers regarding his heroin suppliers immediately following his arrest. CD-1 has been debriefed on several other occasions by law enforcement with his attorney present.

8. CD-1 identified one of his heroin suppliers as a person he had saved in his mobile telephone associated with the SUBJECT TELEPHONE NUMBER. The user of the SUBJECT TELEPHONE NUMBER was later identified by investigators as KAMURI VALONTE LEAK (LEAK). The details of how investigators identified LEAK are provided below.

9. A review of the data from CD-1's seized mobile telephone indicated dozens of text messages between CD-1 and the SUBJECT TELEPHONE NUMBER that appear to show that CD-1 obtained heroin from the user of the SUBJECT TELEPHONE NUMBER during the time period from November 17, 2016 to December 17, 2016. For example, on November 23, 2016, there was a text message from CD-1 to the SUBJECT TELEPHONE NUMBER that read, "How sure are you that this aint been touched/stepped on/etc? Anyone tried this batch? Something in here clogging up the works, looks & feels different, especially in water." The SUBJECT TELEPHONE NUMBER replied, "Le me hit my ppl its that bad." On November 25, 2016, CD-1's telephone sent a text message to the SUBJECT TELEPHONE NUMBER that read, "Shooters wont touch it. Clogs their shit up, leaves like sand behind. Definitely cut with some kind of pill.

That's half my clientele. The snorters don't like it, it burns too much, has no legs & barely keeps you well." On December 7, 2016, the SUBJECT TELEPHONE NUMBER sent CD-1's telephone a text message which read, "OK it's a 10 right now just went thru 70 and everyone is loving it only have 40 left promise its a 10." Based on my training and experience as a narcotics investigator, I believe that the aforementioned text messages corroborate CD-1's statements that he obtained heroin from the user of the SUBJECT TELEPHONE NUMBER. CD-1 referred to his heroin customers ("shooters" and "snorters"), and CD-1 questioned the quality of previously obtained heroin ("How sure are you that this aint been touched/stepped on/etc?"). Finally, the user of the SUBJECT TELEPHONE NUMBER indicated that he had heroin that was high quality, and that he only had 40 grams remaining ("it's a 10 right now just went thru 70 and everyone is loving it only have 40 left").

11. CD-1 told investigators that he began to obtain heroin from the user of the SUBJECT TELEPHONE NUMBER around 2015, and that CD-1 had obtained heroin from him on about 40 to 50 occasions. CD-1 usually purchased 10 grams of heroin to test the quality, and he would then return soon after to get an additional 50 grams (approximately). CD-1 indicated that the largest amount of heroin that he received from the user of the SUBJECT TELEPHONE NUMBER at one time was 100 grams.

12. Beginning on February 19, 2017, CD-1 began to send text messages to the SUBJECT TELEPHONE NUMBER at the direction of law enforcement in order to arrange a heroin transaction to occur on February 22, 2017, and the text messages were recorded by law enforcement. CD-1 sent the SUBJECT TELEPHONE NUMBER a text message which read, "Cool. Tryin to see if things good up top. Been off n on here. Let me know if there's anything

worth driving up for..." The SUBJECT TELEPHONE NUMBER replied, "Yes everything is a1."

On February 21, 2017, CD-1 called the SUBJECT TELEPHONE NUMBER and the call was recorded. During the conversation, CD-1 said, "Yeah, shit...working my ass off, trying to finish this project today. Ahh, I just saw your text from this morning, umm, you think like 12:30, one tomorrow be good." LEAK replied, "Yeah, ahh, whatch you, ahh, what would the count be." CD-1 asked, "What's that?" LEAK replied, "What's the count?" CD-1 then said, "Ahh, generally, I'd start with the usual ten, but I don't know if I want to drive back up. How? You had this for a while, people been saying good shit?" LEAK responded, "Yes, um, I've been killing it for-forever now man [unintelligible]."

13. On February 22, 2017, CD-1 was provided with a transmitter, two recording devices, and $1,000 in official government funds. CD-1 traveled to a hotel parking lot in Pikesville, Maryland, after being directed to go there by LEAK via text message. Investigators observed LEAK enter CD-1's vehicle and exit approximately one minute later. LEAK then entered a vehicle with Maryland license plates and departed the area. A Maryland Motor Vehicles Administration (MVA) query indicated that the vehicle is registered to LEAK at an address in Baltimore, Maryland. CD-1 was followed by investigators from the deal location to a staging area. Investigators then retrieved the transmitter, recording devices, and a light brown powder substance in clear plastic from CD-1. The substance and its packaging weighed approximately 11.1 grams and it field tested positive for the presence of heroin. CD-1 stated that he provided LEAK the $1,000 in exchange for the light brown powder substance. I later reviewed the audio and video recordings from the transaction and it appeared to me that LEAK was very familiar with CD-1, and that CD-1 and LEAK exchanged the suspected heroin for the $1,000, as CD-1 reported.

14. CD-1 does not know LEAK's true name. In December 2016, CD-1 identified a photograph of a different individual presented by law enforcement as CD-1's heroin supplier. After the controlled purchase from LEAK on February 22, 2017, CD-1 indicated that the person who supplied him with the suspected heroin was the person who CD-1 was referring to as his heroin supplier in the previous law enforcement interviews and the person associated with the SUBJECT TELEPHONE NUMBER in CD-1's phone. LEAK was identified as the supplier by investigators due to (1) the vehicle he operated is registered to him and (2) a comparison of surveillance photos and videos of the controlled purchase with LEAK's MVA photo, his Facebook account, and his previous arrest booking photographs.

## CONCLUSION

15. Based on the facts outlined above, I submit there is probable cause to believe that KAMURI VALONTE LEAK is using the SUBJECT TELEPHONE NUMBER in connection with and to further a conspiracy to distribute heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

16. A court order authorizing location-based services will assist investigators in determining LEAK's location and where he stores narcotics.

17. Revelation of the attempt to locate and investigate LEAK through use of his identified telephone would greatly compromise this ongoing investigation. If alerted to the existence of the ongoing investigation, LEAK would likely change patterns, change phones, resort to other communications media, or flee.

18. Once law enforcement receives an order for the type of information requested herein, it is served upon the subject telephone number's provider. Once received, it is catalogued

and assigned to an electronic surveillance representative, who, based on caseload, will "provision" the subject telephone number for delivery in the appropriate "switches," thereby instructing those switches to forward the information to the provider's central collection point. "Provisioning" can occur at any time and, except for exigent cases, is dictated solely by the provider. Thus, the FBI cannot control whether the order will be electronically implemented during day or night.

19. I believe that monitoring the transmissions from the SUBJECT TELEPHONE NUMBER, which (1) includes any time of the day or night as required; (2) is expressly limited to transmissions needed to ascertain the physical location of the SUBJECT TELEPHONE NUMBER; and (3) expressly excludes any voice communications transmitted from Sprint Corporation cellular service, will provide investigating agents the ability to conduct effective surveillance of LEAK, identify his customers, identify possible residences and stash locations, and identify other co-conspirators, without compromising the ongoing investigation.

Donald August Mockenhaupt
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 16th day of March, 2017.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa C. Buchanan
United States Magistrate Judge
Eastern District of Virginia